**F.B. BOUSHEHRY, Appellant/Plaintiff,**

**v.**

**CITY OF INDIANAPOLIS, et al., Appellees/Defendants.**

No. 49A05–1002–PL–55.

Court of Appeals of Indiana.

Aug. 3, 2010.

Christopher J. McElwee, Terry L. Monday, Monday Jones & Albright, Indianapolis, IN, Attorneys for Appellant.

Richard G. McDermott, Office of Corporation Counsel, Indianapolis, IN, Attorney for Appellees.

## OPINION

BRADFORD, Judge.

On appeal, Appellant/Plaintiff F.B. Boushehry argues that the trial court erred in granting summary judgment in favor of Appellant/Defendant City of Indianapolis ("City"). Concluding that summary judgment was proper, we affirm.

## FACTS AND PROCEDURAL HISTORY

In 1992, Boushehry contracted to purchase a parcel of land located near the intersection of Madison Avenue and Stop 10 Road in Indianapolis for the purpose of building a condominium complex. The parcel of land was adjacent to a shopping center owned by John and Martha Carmody. The Carmodys' shopping center was connected to a private sewer line built by them, which connected to the nearest public sewer line. The Carmodys' sewer line ran along Stop 10 Road, including portions of the parcel that Boushehry intended to purchase.

Boushehry's condominium complex was required to connect to a sewer line in order to be habitable. Boushehry could either construct his own private sewer line that would connect with the nearest public sewer line directly or negotiate the right to connect to the Carmodys' sewer line. Boushehry chose to do the latter. Boushehry, however, was unable to agree to terms with the Carmodys because he disputed their ownership of the private sewer line. Eventually, the City became involved in the dispute over the ownership of the private sewer line and determined that the private sewer line was owned by the Carmodys. The City also determined that the private sewer line was not suitable for public dedication because it did not comply with current sewer requirements or specifications, and could not handle the increased sewer flow from the proposed condominium complex. The City additionally determined that should Boushehry and the Carmodys reach an agreement regarding use of the private sewer line, certain repairs would have to be made to ensure that it could handle the increased sewer flow.

Despite having knowledge of the issues surrounding the private sewer line, Boushehry bought the above-mentioned parcel

in 1993. Boushehry and the Carmodys continued to dispute ownership of the private sewer line throughout the 1990s and beyond. In about 2001, Boushehry began to develop the condominium complex. Throughout 2001 through 2003, Boushehry made several representations to the City that he would rehabilitate the existing private sewer line. The City specifically required the rehabilitation of the private sewer line when Boushehry applied for sewer construction and connection permits. Boushehry and the Carmodys continued to dispute the ownership and use of the private sewer line until 2006.

On October 9, 2003, the City issued a stop-work order due to an unlicensed electrical contractor working on the condominium complex without a permit. The City also issued two additional stop-work orders on November 6, 2003, because a sanitary sewer was constructed contrary to the design approved by the City and also because Boushehry failed to properly submit a Certification of Completion and Compliance for a storm sewer. In addition, the City determined that Boushehry had connected at least four condominium units and discharged waste into the private sewer line, which had not been rehabilitated as required by the City. · The City "red flagged" the condominium complex, which meant that the complex could not obtain additional permits for the project until all violations were resolved.

On November 7, 2003, Boushehry filed a Complaint for Preliminary and Permanent Injunction and for a Writ of Mandamus to prohibit enforcement of the City's October 2003 stop-work order. He later amended his complaint to include all stop-work orders issued by the City. On April 5, 2004, Boushehry filed a Notice of Tort Claim ("notice") pursuant to the Indiana Tort Claims Act ("Act") and attached his amended complaint to the notice. Bou-

shehry's notice referred only to the October 2003 stop-work order as the basis of his claim against the City. The trial court held hearings on Boushehry's amended complaint, at the conclusion of which the court determined that the Carmodys owned the private sewer line, that the private sewer line could not handle the increased sewer flow from the condominium complex without first undergoing the rehabilitation required by the City, and that the City's stop-work orders and red flag raised against the condominium complex were proper and lawful. Boushehry did not appeal this judgment.

In 2005, Boushehry filed the Complaint for Damages which gave rise to the instant matter. The 2005 Complaint for Damages alleged that "[f]rom 1992 to the present, [the City has] negligently, tortiously, and erroneously determined that [the private sewer line] is owned by [the Carmodys]." Appellant's App. pp. 11–12. Boushehry did not file a new notice under the Act in connection with his 2005 Complaint for Damages, but, rather, relied on his 2004 Notice. In 2007, Boushehry amended his complaint to include a claim that from 1992 to the present, the City made false and malicious statements to third parties, including the Carmodys, regarding his ownership of the parcel located near the intersection of Madison Avenue and Stop 10 Road.

On September 10, 2009, the City filed a Motion for Summary Judgment in which it asserted that Boushehry's claims were barred due to his failure to comply with the Act's notice requirements, the statute of limitations, the doctrine of res judicata, and the defense that the City's actions were justified. Following briefing, the trial court granted summary judgment in favor of the City on January 8, 2010. This appeal follows.

## DISCUSSION AND DECISION

■ Boushehry appeals from the grant of summary judgment in favor of the City. Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hammock v. Red Gold, Inc.,* 784 N.E.2d 495, 498 (Ind.Ct.App.2003), *trans. denied.* The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. *Kumar v. Bay Bridge, LLC,* 903 N.E.2d 114, 115 (Ind.Ct.App.2009), *reh'g denied.* However, we review a trial court's grant of summary judgment de novo, construing all facts and making all reasonable inferences in favor of the non-moving party. *Id.* The party appealing from the grant of summary judgment has the burden of persuading the court that the grant of summary judgment was erroneous. *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1231 (Ind.1994). Upon review, we examine only those materials designated to the trial court on the motion for summary judgment. *Kumar,* 903 N.E.2d at 115. We may affirm the trial court's grant of summary judgment upon any basis supported by the record. *Id.*

■ According to the provisions of the Act, a claim against a political subdivision is barred unless notice is filed with the political subdivision within 180 days after the loss occurs. Ind.Code § 34–13–3–8 (2009). The notice must describe in a short and plain statement the facts on which the claim is based. Ind.Code § 34–13–3–10 (2009).

> The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

*Id.* It is well-established that notice is sufficient if it substantially complies with the content requirements of the statute. *Collier v. Prater,* 544 N.E.2d 497, 499 (Ind. 1989); *Howard County Bd. of Comm'rs v. Lukowiak,* 810 N.E.2d 379, 382 (Ind.Ct. App.2004), *trans. dismissed.* " 'What constitutes substantial compliance, while not a question of fact, but one of law, is a fact-sensitive determination.' " *Lukowiak,* 810 N.E.2d at 382 (quoting *Collier,* 544 N.E.2d at 499). Generally, a notice that is filed within the required time period, informs the municipality of the claimant's intent to make a claim, and contains sufficient information which reasonably affords the political subdivision with an opportunity to promptly investigate the claim will satisfy the purpose of the Act and will be held to substantially comply with the Act. *Id.*

■ In reviewing a notice provided by a claimant to a political subdivision, the emphasis is whether the public body is sufficiently notified of the claim, able to meet it, and is not misled. *Id.*

> The crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense. What information is sufficient will vary depending upon the facts of each case.

*Id.* (quoting *Collier,* 544 N.E.2d at 500). The failure to comply with the notice requirements of the Act will subject a claim to summary judgment. *Fowler v. Brewer,* 773 N.E.2d 858, 864 (Ind.Ct.App.2002), *trans. denied.*

Upon appeal, Boushehry contends that the trial court erred in granting summary judgment in favor of the City. In support,

Boushehry cites to *Collier*. In *Collier*, the plaintiff sent a letter notifying city officials that he intended to file suit against the city seeking compensation for injuries that he claimed to have received during his arrest. 544 N.E.2d at 499. This notice to city officials provided as follows:

> Please be advised that Mr. Collier hereby provides Notice of Claim for injuries sustained during an arrest by the Indianapolis Police Department. . . .
>
> Mr. Collier will seek damages sufficient to compensate him for medical treatments required as a result of the injuries sustained during his arrest. The claim will also encompass or seek recovery for time lost from work as well as for inconvenience, pain and suffering.
>
> The exact amount of Mr. Collier's claims cannot be ascertained at present, however, will be subject to immediate determination at the conclusion of his course of treatment for the injuries sustained.

*Id.* The plaintiff subsequently filed suit against the city seeking compensation for injuries he claimed to have received during his July 16, 1985 arrest. *Id.* at 498. The trial court granted the city's request for summary judgment on the basis that the plaintiff failed to give the city proper notice of his claim because the notice failed to include the location and date of the event producing the injury. *Id.* The Indiana Supreme Court later reversed the trial court upon determining that the notice provided by the plaintiff, while perhaps not in full compliance, substantially complied with the notice requirements set forth in the Act because it provided adequate information such that the city's investigation would not be stymied. *Id.* at 500.

■ Here, however, unlike in *Collier*, Boushehry's notice did not give the City *any* notice of the claims that Boushehry subsequently raised against the City because the claims raised by Boushehry were entirely different from the claim that was identified in his notice. *See Lukowiak*, 810 N.E.2d at 383–84 (providing that plaintiff was barred from bringing certain claims against the governmental entity because the claims raised were not the same as the claims described in the notice provided pursuant to the Act, and thus the notice was insufficient to inform the governmental agency that it needed to defend against those claims). Boushehry's Notice reads as follows:

> Pursuant to the Indiana Tort Claims Act, Indiana Code 34–13–3–1 et seq., Fred B. Boushehry d/b/a Oakwood Homes hereby serves notice of tort claim upon the City of Indianapolis and the Indianapolis Department of Metropolitan Development for damages relating to their issuance and refusal to release an unlawful stop-work order.
>
> On October 9, 2003, Defendants issued an unlawful stop-work order to Claimant forcing him to cease construction of an apartment building. Defendants thereafter failed and refused to release said order even when it became obvious that the order was unlawful, causing economic harm to Claimant that exceeds the amount of $300,000.00. In addition to Claimant, the names of the persons involved on behalf of the City and its Department of Metropolitan Development are believed to be Ed Frye, Stefan Wolfla, Jeff Hazel and Matt Senseny. The facts of this matter are stated in the Amended Complaint attached hereto.
>
> Claimant seeks $300,000.00 in damages plus attorney fees and costs. His name and address is: Fred Boushehry, 6010 Buck Trail Road, Indianapolis, Indiana 46237.

Appellant's App. p. 39. Pursuant to the plain language of Boushehry's notice, any

claim subsequently raised against the City was limited to a claim for $300,000 in damages resulting from the issuance of the stop-work orders. However, Boushehry's amended complaint, which included claims of tortious interference with business contracts and slander of title, did not make any claims relating to the stop-work orders mentioned in Boushehry's notice. In fact, in filings before the trial court, Boushehry explicitly conceded that his "damages claims are not based on the City's issuance of the stop-work orders issued in 2003." Appellant's App. p. 116.

In light of the language employed in Boushehry's notice and his amended complaint, coupled with his concession before the trial court that the claims included in his amended complaint were not based upon the claim mentioned in his notice, we conclude that there are no means by which Boushehry's notice may be construed to include claims for tortious interference with business contracts or slander of title. The claims as stated in the notice regard the issuance of unrelated stop-work orders. Therefore, we conclude that Boushehry's notice was insufficient to notify the City that it needed to defend itself against the claims ultimately raised in Boushehry's Amended Complaint. *See Lukowiak,* 810 N.E.2d at 383–84.[1] In order to bring the instant claims, Boushehry would have needed to provide the City with notice of them pursuant to the Act, which he failed to do. Having concluded that the trial court's order granting summary judgment was proper because Boushehry's notice did not substantially com-

ply with the Act, we need not consider whether the grant of summary judgment would have been proper for any of the alternative reasons challenged by Boushehry on appeal. *See Kumar,* 903 N.E.2d at 115 (providing that we may affirm the trial court's grant of summary judgment upon any basis supported by the record).

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J, concur.

---

1. We are also unpersuaded by Boushehry's claim that he provided sufficient notice to the City because his notice included the names of certain individuals who should have been aware of all of the past interactions between Boushehry, the Carmodys, and the City. Boushehry claims that these individuals should have been aware of all potentially tortious conduct committed by the City. The Act requires that a plaintiff notify the governmental agency of his intention to file suit for a particular tortious act, and merely limiting individuals who may be aware of potentially tortious acts committed by the governmental agency is not sufficient to support a subsequent cause of action. *See* Ind.Code § 34–13–3–10.